**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RAMONA JONES,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-0107-BK** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION**

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 16), this case has been transferred to the undersigned for final ruling. For the reasons discussed herein, the Plaintiff's *Motion for Summary Judgment* (Doc. 17) is **DENIED**, and the Defendant's *Motion for Summary Judgment* (Doc. 19) is **GRANTED**. The Commissioner's decision is thus **AFFIRMED**.

## I. BACKGROUND[1]

### A. Procedural History

Ramona Jones (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under the Social Security Act (the Act). Plaintiff filed for SSI and DIB, claiming that she had been disabled since January 5, 2007. (Tr. at 17). At the administrative hearing, Plaintiff amended her onset date to December 14, 2006. (Tr. at 35).

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

Her application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 73-75, 79, 97). She personally appeared and testified at a hearing held in January 2009. (Tr. at 32). In April 2009, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 15-23). In September 2010, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1, 9-10). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B. Factual History**

**1. Age, Education, and Work Experience**

Plaintiff was 37 years old on her disability onset date and had an eighth grade education. (Tr. at 21, 62, 195). She had past relevant work history as an unskilled cook and helper. (Tr. at 21).

**2. Medical Evidence Before the ALJ**

In January 2007, Plaintiff went to her doctor, complaining of soreness in both of her hands, worse on the left, and numbness and tingling in her left hand. (Tr. at 239). Later that month, her blood pressure was 152/100 and she was ordered to wear a splint on her left hand for carpal tunnel syndrome. (Tr. at 237-38). Plaintiff's treating doctor noted restrictions in both hands and wrists, with no grasping/squeezing, wrist flexion, keyboarding, or lifting or carrying more than three pounds for more than two hours per day. (Tr. at 237). Throughout 2007, Plaintiff continued to experience high blood pressure, that improved when she took her prescribed medication, as well as numbness, pain, and tenderness in her hands. (Tr. at 248-52, 291, 294, 332, 334). She complained of neck pain and depression in May 2007, and was taking

Cymbalta for her depression. (Tr. at 155, 209, 226-27, 291-92, 312, 326, 328).

In May 2007, examining physician Dr. Robert Silverman noted that Plaintiff had carpal tunnel syndrome, headaches, and high blood pressure. (Tr. at 277-78). Plaintiff said that she was recommended for carpal tunnel surgery, but could not afford it. (Tr. at 277). She wore a right wrist splint, there was mild swelling of her wrist, and slight to moderate decreased range of motion. (Tr. at 278). Plaintiff had marked tenderness in her wrist, and her grip strength was 50 percent normal. (Tr. at 278).

Also in May 2007, a state consultative doctor determined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, and stand/walk/sit six hours in a workday. (Tr. at 281). He based his determination on the facts that (1) earlier that year, Plaintiff had normal strength in both hands and was advised to wear hand splints and take medication, and (2) she had complained to Dr. Silverman about pain in her right arm and numbness in three fingers, but the swelling in her wrist was mild, and she had only slightly decreased range of motion on flexion and extension. (Tr. at 281). The consulting doctor did find, however, that Plaintiff had limited handling and fingering abilities. (Tr. at 282-83).

In September 2007, another consulting physician found that Plaintiff could (1) occasionally lift 20 pounds, (2) frequently lift ten pounds, (3) stand/walk/sit for six hours in a workday, and (4) had a limited ability to handle and finger. (Tr. at 316, 318). He concluded that although Plaintiff had reduced range of motion and 50 percent grip strength, her alleged limitations were not fully supported by the evidence. (Tr. at 320).

In June 2008, Plaintiff's treating physician, Dr. Christopher Garrison, completed a cervical spine Residual Functional Capacity (RFC) questionnaire, noting that Plaintiff had

cervical radiculopathy. (Tr. at 351, 368- 373). Dr. Garrison noted that Plaintiff had chronic pain with corresponding weakness, tenderness, muscle spasm, reduced grip strength, and 50 percent limitation of motion in her cervical spine. (Tr. at 368). He further opined that Plaintiff had moderate headaches, five days a week for 30 minutes each, associated with the impairment of her cervical spine. (Tr. at 368-69). Dr. Garrison noted that Plaintiff's depression and anxiety affected her physical condition, and her symptoms were severe enough to interfere frequently with her ability to perform even simple work tasks. (Tr. at 370). He opined that Plaintiff was only capable of (1) sustaining a low stress job, (2) walking one block, (3) sitting for 20 minutes at a time, (4) standing for ten minutes at a time, (5) sitting for four hours in a workday, and (6) standing/walking less than two hours. (Tr. at 370-71). Dr. Garrison further stated that Plaintiff would need to shift positions at will and take hourly, unscheduled breaks, and she could occasionally lift less than ten pounds, but never more; could occasionally move her head; had numerous postural limitations; could grasp, manipulate and reach using her hands, fingers, and arms for only 30 percent of a workday; and would likely be absent more than four days a month due to her impairments. (Tr. at 371-72).

**3. Hearing Testimony**

Plaintiff testified that her carpal tunnel syndrome caused severe pain, she wore a prescribed hand brace, and prescription medicine did not alleviate the pain. (Tr. at 39-40, 43-44). She is right-handed and stated that the pain in her right arm prevented her from picking up anything heavier than a glass of water, and she could not do household chores, dress or bathe herself, or go to the bathroom without assistance. (Tr. at 45, 48-50, 59). Her left arm did not cause her any problems but, because of nerve damage in her neck, she had trouble looking down.

(Tr. at 57-58). Plaintiff said that she had not sought mental health treatment because she could not afford it, and the medication she was prescribed for depression did not help. (Tr. at 53-54).

The ALJ asked a vocational expert (VE) whether a right-handed person who could (1) lift and carry on her left side 20 pounds occasionally and ten pounds frequently, (2) lift and carry on her right side ten pounds occasionally and five pounds frequently, (3) sit, stand, and walk for six hours in a workday, (4) occasionally handle, finger, and reach with the right arm, but had unlimited use of the left arm, (5) interact and respond appropriately with coworkers, and (6) perform simple tasks, could perform Plaintiff's past relevant work. (Tr. at 63-64). The VE said that she could not, but that such a person could perform sedentary unskilled work as an order clerk for food and beverage, a document preparer, and an optical goods assembler. (Tr. at 65). When presented with Dr. Garrison's RFC, however, the VE testified that Plaintiff would not be able to work at all. (Tr. at 66-69).

**C. <u>The ALJ's Findings</u>**

The ALJ first found that Plaintiff had the severe impairments of carpal tunnel syndrome and hypertension. (Tr. at 17). The ALJ ruled that these severe impairments did not meet or equal a Listing, and that, even considering Plaintiff's allegations of cervical radiculopathy and depression at step four of the sequential analysis, she still had the RFC to (1) lift and carry on her left side 20 pounds occasionally and ten pounds frequently, (2) lift and carry on her right side ten pounds occasionally and five pounds frequently, (3) sit, stand, and walk for six hours in a workday, (4) occasionally handle, finger, and reach with her right arm, (5) interact and respond appropriately with coworkers, and (6) perform simple tasks. (Tr. at 18). In particular, at step four, the ALJ found that while Plaintiff was being treated for depression by Dr. Garrison, there

was no indication that she had been treated by a psychiatrist or hospitalized for psychiatric treatment. (Tr. at 20). Additionally, the ALJ noted that Plaintiff's cervical radiculopathy caused her to have pain in her neck and a problem looking down, but objective medical tests did not reveal marked cervical spine problems. (Tr. at 18-20).

The ALJ assigned "less weight" to Dr. Garrison's RFC, finding that it was inconsistent with the medical evidence of record. The ALJ gave great weight to the opinion of the state consulting physician, Dr. Robert Silverman and also gave "some weight" to the non-examining physicians' opinions because they were supported by the medical evidence. (Tr. at 18-20). The ALJ concluded that while Plaintiff could not perform her past relevant work, she could perform a limited range of light work based on her RFC and the VE's testimony. (Tr. at 21-22).

## II. ANALYSIS

### A. <u>Legal Standards</u>

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A

finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**2. Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at

any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B. Issues for Review**

*1. Whether the ALJ failed to adjudicate Plaintiff's disability during the relevant period.*

Plaintiff first argues that the ALJ only assessed her case commencing on January 5, 2007, rather than on her onset date of December 14, 2006, and thus reversal is warranted. (Doc. 17 at 9-10). The government responds that the ALJ's use of the January 5 date was merely a scrivener's error. (Doc. 19 at 6). Plaintiff replies that it is unclear which of the dates the ALJ utilized. (Doc. 20 at 2).

Upon review, the Court agrees with the government's position. The ALJ clearly found that Plaintiff had not engaged in substantial gainful activity since December 14, 2006, and although he only discussed the medical evidence as of January 5, 2007, Plaintiff does not point to any medical evidence between those dates that would have affected the ALJ's ultimate findings. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). In fact, Plaintiff reported on December 18, 2006, that she was "feeling good." (Tr. at 300). Accordingly, reversal is not warranted on this basis.

*2. Whether the ALJ properly applied the standard set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985).*

Plaintiff contends that the ALJ failed to apply the correct severity standard insofar as he did not expressly cite *Stone* or refer to another opinion of the same effect. (Doc. 17 at 11). She argues that, in applying the incorrect standard, the ALJ erroneously found that her cervical radiculopathy and depression were not severe. (*Id.* at 11-12).

The government responds that the ALJ applied the appropriate severity standard and, even if he did not, any error was harmless because the ALJ proceeded beyond step two of the sequential analysis. The government also urges that the medical evidence supports the ALJ's determination that Plaintiff's depression and radiculopathy were not severe. (Doc. 19 at 7-8). Plaintiff replies that the harmless error analysis does not apply to a *Stone* error, and the ALJ did not account for her cervical radiculopathy and depression in making his RFC determination. (Doc. 20 at 3-6).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute. *See Stone*, 752 F.2d at 1104-05. Therefore, the Court of Appeals for the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 1101, 1104-05. In other words, the *Stone* standard does not allow for any

interference with the claimant's ability to work. *Sweeney v. Astrue*, 2010 WL 6792819 at *5 (N.D. Tex. 2010). The *Stone* Court also held that it would assume that the ALJ applied the incorrect legal standard to the severity requirement unless the correct standard was set forth by reference to the *Stone* opinion or another of the same effect, or by an express statement that the court's construction of section 404.1520(c) was used. *Stone*, 752 F.2d at 1106. If the ALJ applies the incorrect legal standard, the Court held that reversal is mandatory. *Id.*

Accordingly, the undersigned previously has reversed and remanded on *Stone* grounds where the ALJ used the incorrect severity standard. *See, e.g.*, *Bradford v. Astrue*, 2011 WL 1297528 (N.D. Tex. 2011); *see also Luna v. Astrue*, 2010 WL 582151, *7 (N.D. Tex. 2010) (Ramirez, M.J.; Lynn, J.); *Grant v. Astrue*, 2010 WL 26478, *7 (N.D. Tex. 2010) (Bleil, M.J.; Means, J.); *Neal v. Comm'r of Social Sec. Admin.*, 2009 WL 3856662 *1 (N.D. Tex. 2009) (Godbey, J.); *Key v. Astrue*, 2007 WL 2781930, *4 (N.D. Tex. 2007) (Kaplan, M.J.; Godbey, J.). Nevertheless, this case marks the first time that the government has squarely presented and adequately briefed before the undersigned its argument that *Stone* error is harmless if the ALJ continues beyond step two of the sequential analysis.

In fact, *Stone* itself provides that "[i]n view of both the Secretary's position in this case and our recent experience with cases where the *disposition has been on the basis of nonseverity*, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement," thereby mandating reversal. *Stone*, 752 F.2d at 1106 (emphasis added). Indeed, numerous Fifth Circuit authorities state that reversal based on a *Stone* error is not required if the ALJ does not terminate the case at step two of the sequential analysis. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (finding that appellant's argument that

the ALJ erred in failing to find her back problems severe was not grounds for a remand because the case did not implicate the "non-severity" of plaintiff's condition since the ALJ continued through step four of the sequential analysis); *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (no *Stone* error where ALJ properly found that the claimant's hypertension was mild and proceeded through step five, rather than denying benefits "prematurely . . . based on an improper determination of 'non-severity'"); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (dicta stating that even though the ALJ failed to cite to *Stone*, the claimant's *Stone* argument was "irrelevant to the disposition of the case" because the case was not decided at step two; specifically, the ALJ found that the claimant could return to his past relevant work, "an inquiry unaffected by the test set forth in *Stone*"); *Lopez v. Bowen*, 806 F.2d 632, 634 n.1 (5th Cir. 1986) (no *Stone* error occurred where the ALJ found that the claimant did suffer from "severe" impairments, but found that the impairments did not prevent him from doing his past relevant work); *see also Anthony v. Sullivan*, 954 F.2d 289, 294 (5th Cir. 1992) (stating that "*Stone* merely reasons that the [severity] regulation cannot be applied to summarily dismiss, *without consideration of the remaining steps in the sequential analysis*, claims of those whose impairment is more than a slight abnormality" and noting that if the claimant does not have a "severe" impairment, the ALJ typically will deny the claim without consideration of the remaining steps in the sequential analysis) (emphasis added).

Further, if the ALJ proceeds past step two of the sequential evaluation process, it is *presumed* that the ALJ found that a severe impairment existed unless the ALJ states otherwise. *Reyes v. Sullivan*, 915 F.2d 151, 154 & n.1 (court could infer that the ALJ found that the claimant's hypertension was a severe impairment because the ALJ found at step four that the

hypertension did not prevent the claimant from performing his past relevant work); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (holding that the ALJ did not err in not explicitly finding an impairment severe where the ALJ reached the fifth step of the sequential analysis in evaluating the claim and, as a result, implicitly found a severe impairment to exist); *Shipley v. Bowen*, 812 F.2d 934, 935 (5th Cir. 1988) (court could infer that the ALJ found that the claimant's back injury was a severe impairment because the ALJ found that the injury did not meet or equal a listed impairment and did not prevent the claimant from working as a security guard); *Moon v. Bowen*, 810 F.2d 472, 473 (5th Cir. 1987) (noting that the ALJ implicitly found that a severe impairment existed because he proceeded to step five).

Thus, even in those cases where the ALJ does not explicitly find an impairment to be severe, a *Stone* error is not reversible if the ALJ proceeded beyond the second step of the five-step sequential analysis in analyzing the claimant's impairments, thereby allowing the district court to infer that the ALJ did find the impairment severe. In other words, the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis because those stages are premised on a finding, at the second step of the analysis, that the impairments were severe. *See Reyes*, 915 F.2d at 154 & n.1. This is to be distinguished from the situation wherein the ALJ commits a *Stone* error by applying an incorrect severity standard, explicitly rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments. *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000).

In the case at bar, the ALJ clearly committed a *Stone* error because he did not expressly

cite *Stone* or refer to another opinion of the same effect. Instead, the ALJ stated that an impairment or combination of impairments is severe if it "significantly limits an individual's ability to perform basic work activities." (Tr. at 16). Further, he said that an impairment or combination of impairments is not severe when "medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (Tr. at 16). Although the ALJ did refer to 20 C.F.R. §§ 404.1521 and 416.921, and SSRs 85-28, 96-3p, and 96-4p, none of these sources substitute as a proper construction of the standard.

The ALJ thus applied the incorrect severity standard, yet he explicitly accepted Plaintiff's carpal tunnel syndrome and hypertension as severe. Under the Fifth Circuit cases cited above, this is not grounds for reversal because the ALJ proceeded beyond step two in the sequential analysis in discussing these impairments. *Adams*, 833 F.2d at 512. Moreover, while the ALJ did not explicitly find Plaintiff's cervical radiculopathy and depression to be "severe," he did address those impairments at step four of the sequential analysis. (Tr. at 19-20). Accordingly, this Court must presume that the ALJ also found Plaintiff's cervical radiculopathy and depression to be severe impairments. *Reyes*, 915 F.2d at 154 & n.1. Thus, there is no ground for reversal because the ALJ proceeded beyond step two in the sequential analysis in discussing all of Plaintiff's impairments. *See* SSR 96-8p, 20 C.F.R. § 404.1523 (in assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe). Accordingly, Defendant is entitled to summary judgment as to this argument.

*3. Whether the ALJ gave proper weight to Plaintiff's treating physician's opinion.*

Plaintiff contends that the ALJ improperly rejected Dr. Garrison's opinion because the

ALJ's RFC findings are different than those assessed by Dr. Garrison. (Doc. 17 at 13). Plaintiff complains that the ALJ cited to no other treating or examining opinion to which he gave more weight, other than Dr. Silverman's opinion, which only notes a poor prognosis for Plaintiff's carpal tunnel syndrome and does not address the same impairments covered by Dr. Garrison. (*Id.*). Plaintiff thus claims that the ALJ was required by *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) to specifically address the six factors set out in 20 C.F.R. § 404.1527(d)(2). Further, Plaintiff maintains, Dr. Garrison's opinion is consistent with the record evidence and her testimony.

The government responds that the holding in *Newton* is limited to circumstances where the ALJ completely rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant, and where the record does not contain "competing first-hand medical evidence" that supports the ALJ's decision. (Doc. 19 at 9). The government submits that those circumstances are not present here because (1) the ALJ merely gave Dr. Garrison's opinion "less weight," and (2) the record contains "competing first-hand medical evidence." (*Id.*).

When a treating physician's opinion about the nature and severity of a claimant's impairment is well-supported and not inconsistent with other substantial evidence, the Commissioner must give the opinion controlling weight. *Newton*, 209 F.3d at 455. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the [six-step] criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id*. at 453, 455 (emphasis in original). Nevertheless, a treating

physician's opinion may be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 455-56.

In this case, the ALJ had good cause to give Dr. Garrison's RFC assessment "less weight" because it was unsupported by the medical evidence of record. *Id.* In particular, while Dr. Garrison opined that Plaintiff could only walk, sit and stand for short blocks of time, could only sit for four hours in a workday, and stand/walk less than two hours, there is no evidence to support these restrictions since Plaintiff's pain is limited to her cervical spine and right arm. For the same reasons, Dr. Garrison's opinion is unsupported insofar as he opined that Plaintiff would need to frequently shift positions, take breaks, and miss work as well as have numerous postural limitations.

On the other hand, Dr. Garrison's opinion that Plaintiff could occasionally lift less than ten pounds was supported as relates to Plaintiff's right arm, and the ALJ incorporated that finding into his RFC. (Tr. at 18-20). Similarly, the ALJ included in his RFC assessment Dr. Garrison's opinion that Plaintiff could only reach, handle and finger items for 30 percent of a workday, insofar as the ALJ found Plaintiff could only occasionally do those things with her right hand. Accordingly, the ALJ did not entirely reject Dr. Garrison's opinion, but properly gave it less weight, and therefore did not need to perform the six-step analysis discussed in *Newton*. Thus, Defendant is entitled to summary judgment in this regard.

*4. Whether the ALJ's step five findings were supported by substantial evidence.*

Plaintiff notes that the ALJ limited her to work involving only *occasional* reaching, handling and fingering with her right arm and found her capable of being an order clerk,

document preparer, or optical assembler. (Doc. 17 at 18-19). However, Plaintiff urges the ALJ based his findings on the VE's testimony, which conflicts with the job descriptions in the *Dictionary of Occupational Titles* (DOT) that indicate that those jobs require at least *frequent* reaching, handling and fingering. (*Id.*).

The government responds that the limitations contained in the DOT descriptions do not preclude Plaintiff from performing the jobs identified by the VE because none of the job descriptions mentions a need for bilateral frequent reaching, handling, and fingering. Plaintiff replies that she is right-handed, and her right hand and arm are impaired, thus she cannot do the jobs about which the VE testified. (Doc. 20 at 8-9).

DOT § 209.587-018, cited in the ALJ's opinion, provides that a direct mail clerk "mails letters, merchandise samples, and promotional literature to prospective customers. Receives requests for samples and prepares required shipping slips. Maintains files and records of customer transactions." DOT § 249.587-018 specifies that a document preparer (1) prepares documents for microfilming, using a paper cutter, photocopying machine, rubber stamps, and other work devices; (2) cuts documents into individual pages of standard microfilming size; (3) stamps pages or inserts instruction cards between pages of material; and (4) prepares cover sheets and document folders for material and index cards for company files.

Nothing in either job description suggests that these light-duty jobs require *frequent* (as opposed to occasional) handling, reaching, and fingering with *both* arms, such that Plaintiff necessarily would need to use her right arm more than occasionally. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (affirming finding that claimant, whose left arm had been amputated below the elbow, could perform jobs of cashier and ticket seller even though the DOT specified

that such jobs required some manual dexterity). Thus, the ALJ's determination that Plaintiff could perform this work is supported by substantial evidence. *Greenspan*, 38 F.3d at 236. Further, even if the VE's conclusion conflicted with the DOT regulations, "the ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so" as it does in this case. *Carey*, 230 F.3d at 146. Accordingly, Defendant is also entitled to summary judgment on this ground.

## III. CONCLUSION

For the foregoing reasons, the undersigned **DENIES** Plaintiff's *Motion for Summary Judgment* (Doc. 17) and **GRANTS** Defendant's *Motion for Summary Judgment* (Doc. 19).

**SO ORDERED** on September 28, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE